**Patricia A. COURTNEY, Appellant,**

v.

**Harry B. COURTNEY, Appellee.**

**No. 3742.**

District of Columbia Court of Appeals.

Argued Sept. 27, 1965.

Decided Nov. 24, 1965.

Rehearing Denied Dec. 8, 1965.

---

Clement Theodore Cooper, Washington, D. C., for appellant.

Don Lockett Young, Washington, D. C., entered an appearance for appellee but filed no brief.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

The District of Columbia divorce statute provides for an absolute divorce upon the ground that a spouse has been convicted of a felony and sentenced to a penal institution for not less than two years, part of which sentence has actually been served.[1] Appellant sued for divorce under this section,[2] alleging that appellee had been convicted of attempted robbery and sentenced to the Lorton Reformatory under Section 5010(b)[3] of the Federal Youth Corrections

1. Code 1961, § 16–904 (Supp. IV, 1965) as amended by Pub.Law 89–217, 89th Cong., 1st Sess., approved September 29, 1965.

2. At the time of the filing of the complaint the Code required the offense to be one involving moral turpitude. There is no question that attempted robbery is such a crime. United States v. Evans, 28 App.D.C. 264 (1906).

3. Section 5010(b) provides: "If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter * * *."

Act.[4] Appellant alleged that appellee had served part of his sentence, which was for an indeterminate term not exceeding six years. Although the action was uncontested, the trial court denied the divorce, holding that sentences under the Youth Corrections Act are not within the contemplation of the statutory cause of action for felony divorce. The court reasoned that as the purpose of the Act is the rehabilitation and treatment of youth offenders, appellee was not sentenced to a "penal institution." It further concluded that his sentence did not meet the two-year time requirement since a youth offender committed under the Act can be released at any time. Appellant contends that the trial court's decision was erroneous.

While it is true that the emphasis of the Act is on rehabilitation and correction, it does not completely remove the penal aspects of a post-conviction sentence. Only those who have been convicted of a crime may be committed, and they are subject to complete deprivation of freedom for up to four years and partial deprivation for two additional years.[5] All prison sentences are, theoretically at least, designed to punish and to rehabilitate, and the difference between a sentence to a prison and one under the Youth Corrections Act is merely one of degree. The trial court cited the case of Cunningham v. United States, 256 F.2d 467 (5th Cir. 1958), as supporting its position that a sentence under the Youth Corrections Act is not a sentence to a penal institution. We agree, however, with the Fourth Circuit Court of Appeals' opinion in Pilkington v. United States, 315 F.2d 204, 208 (1963), which distinguished Cunningham, stating:

"* * * the main thrust of the Fifth Circuit majority opinion was to emphasize the 'benefits' flowing from

the Act compared to imprisonment otherwise provided by law for the same offense. Its view seems to be that such confinement, even for a longer duration, being designed to rehabilitate and not to punish, is really not a penalty at all * * *. We consider this view 'too narrow and formalistic.' Jones v. Cunningham, supra [371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)].

"As the majority opinion declares, the Act is based upon modern penological views and methods and aims at correction and rehabilitation rather than punishment. It is granted that it is constitutionally permissible to provide special procedures for sentencing youthful offenders, but this is beside the point * * * However looked at, the deprivation of liberty for a possible period of six years is a greater penalty than a sentence for a lesser period. Applying the euphemism 'treatment' to the discipline during confinement does not alter the arithmetic * * *.

"Whatever basis there may ever have been for distinguishing between the nature of the confinement of an adult under the general statutes, and that of a younger person under the Youth Corrections Act cannot survive the recent decision of the Supreme Court in Jones v. Cunningham, supra. * * *" (Footnote omitted.)

■■■ Moreover, while the legislative history of the divorce act is extremely sparse, it appears that Congress felt that a person should not have to be bound to a spouse who had committed a crime of sufficient gravity to warrant a sentence of two years or more, with the probability that the spouse's wrongdoing would keep them

---

4. 18 U.S.C.A. §§ 5005–5024.

5. Section 5017(c) provides: "A youth offender committed under section 5010(b) of this chapter shall be released condi-

tionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction."

apart for that time. It seems that the purpose of the statute would be served by granting a divorce whether the spouse is sent to a prison or to a youth rehabilitation center. We find that for purposes of the divorce statute, at least, sentence under the Youth Corrections Act is to a penal institution. See Studley v. Studley, 129 Neb. 784, 263 N.W. 139 (1935), and Bowers v. Bowers, 114 Ohio St. 568, 151 N.E. 750 (1926).

The question remains whether appellee's sentence was one for "not less than two years." Section 5010(b) of the Youth Corrections Act provides for an indeterminate sentence with maximum limits of four to six years. While it is true that appellee could have been released within two years, we believe that the correct view is to look to the maximum limits to determine the length of the sentence, for the parties could have been separated for that time. Even though an ordinary prisoner may be pardoned before the end of his term, it has been held that such a release would not abrogate the statutory grounds for divorce. Katz v. Katz, D.C.Mun.App., 136 A.2d 261 (1957); Wood v. Wood, 135 Ga. 385, 69 S.E. 549 (1910); Holloway v. Holloway, 126 Ga. 459, 55 S.E. 191, 7 L.R. A.,N.S., 272 (1906). And in several states indeterminate sentences have been treated as sentences for the maximum term for purposes of the divorce statutes. Oliver v. Oliver, 169 Mass. 592, 48 N.E. 843 (1897); Studley v. Studley, supra. As the court in Oliver stated, 48 N.E. at page 844:

"* * * It is not to be presumed that the legislature, in adopting a system of indeterminate sentences for convicts in the state prison, intended to change the rights of persons under the laws relating to divorce. In our opinion, those rights will be more nearly preserved by treating these sentences as in effect during their maximum term

than only during the minimum term. * * *"

 As appellant proved a ground for divorce under the Code, her claim should have been granted.

Reversed and remanded.