## STATE v. BEST
(No. 1759; July 21, 1932; 12 Pac. (2d) 1110)

The cause was submitted for appellant upon the brief of *John F. Raper* and *George A. Layman,* of Sheridan, Wyoming.

The cause was submitted for the State on the brief of *James A. Greenwood,* Attorney General, *Richard J. Jackson,* Deputy Attorney General, *George W. Ferguson,* Assistant Attorney General, and *R. Dwight Wallace,* Assistant Attorney General, all of Cheyenne, Wyoming.

Kimball, Chief Justice.

This is an appeal from a judgment imposing the death sentence on a conviction of murder in the first degree.

Appellant and another were jointly charged with the crime. Both defendants at first pleaded not guilty. Separate trials were ordered. When, on appellant's trial, the jury had been sworn, it was moved by his counsel that he "be permitted to withdraw his plea of not guilty, enter a plea of guilty, and that he be permitted to submit evidence in mitigation of punishment." The trial judge directed the appellant to stand and said to him: "On the 31st day of August, 1931, in this court you were arraigned on an information charging you with murder in the first degree of T. Elliot Shores, and at that time you entered a plea of not guilty. Do you wish at this time to withdraw that plea and enter a plea of guilty?" The appellant answered "yes." The judge then inquired: "Do you understand, Mr. Best, that if you enter a plea of guilty, your punishment will be either death or life imprisonment as may be fixed by the jury?" The appellant answered "yes," and was then asked whether, realizing that fact, he still desired to plead guilty. He again answered "yes." The attorneys representing appellant then informed the court that they approved of the plea of guilty; appellant was arraigned and entered that plea, and the judge announced that evidence would be taken for the purpose of enabling the jury to fix the punishment. After hearing evidence on behalf of appellant and the state, the jury returned an unqualified verdict of murder in the first degree, which was followed by the judgment appealed from.

The alleged errors all relate to questions of the procedure following appellant's plea of guilty. There can be no doubt

of appellant's guilt. Until after the return of the unfavorable verdict, there was no objection to the procedure. Appellant then moved for leave to withdraw the plea of guilty, and for a trial or rehearing. The motions were denied.

The statute declares that "whoever purposely and with premeditated malice or in the perpetration of * * * robbery * * * kills any human being, is guilty of murder in the first degree and shall suffer death." This was the law until 1915 when the following was added: "but the jury may qualify their verdict by adding thereto, 'without capital punishment' and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment, at hard labor, for life." Laws 1915, ch. 87, sec. 1; R. S. 1931, sec. 32-201.

The information in the form permitted by statute (R. S. 1931, sec. 33-417) charges that defendants "did unlawfully, feloniously, purposely and with premeditated malice kill and murder" the deceased. The evidence showed that the deceased was shot and killed by appellant in the perpetration of a robbery. Appellant claimed that the shooting was unintentional and unpremeditated.

It is contended that the plea of guilty was a confession of a killing on purpose and with premeditation, as charged in the information, and when it appeared from the evidence that the killing was in the perpetration of a robbery, appellant should have been permitted to withdraw the plea. The contention is fully answered by our decision in Harris v. State, 34 Wyo. 175, 242 Pac. 411. The plea of guilty confessed the crime shown by the evidence.

The robbery was planned by appellant who invited his codefendant, a boy of 18, to take part. The place robbed was a gasoline filling station near the City of Sheridan. Shores, the man in charge of the station, was held up at the point of a revolver in the hand of appellant. While appellant was taking money from a money drawer with his left hand, holding the gun in his right, Shores bravely tried to take the revolver. In the struggle, the revolver, still in appel-

lant's hand, was discharged three times, wounding Shores in the arm and body and causing his death. These facts appear from the testimony of the appellant himself, and, of course, establish clearly that the killing was in the perpetration of a robbery and was first degree murder. The appellant claimed that the revolver was fired accidentally and solely as the result of the struggle for its possession. This is difficult to believe, and, if believed, made no difference in the degree of the crime. State v. Thorne, 39 Utah 208, 117 Pac. 58; People v. Bostic, 167 Calif. 754, 141 Pac. 380.

The plea of guilty was evidently prompted by the realization that appellant had no defense to the charge, and by the thought that the jury would be more likely to return a qualified verdict if the crime were confessed. The plea was accepted after the judge had taken every precaution to see that it was made advisedly with full knowledge of its effect. The evidence showed clearly that the crime confessed by the plea had been committed. In these circumstances, there was no reason for permitting a withdrawal of the plea.

The statutes which permit pleas of guilty make no exception of crimes punishable by death. R. S. 1931, secs. 33-515, 33-516. It is argued, however, that the amendment of 1915, permitting the jury to return a qualified verdict in cases of murder in the first degree, had the effect of repealing the statutes which recognize the right of a defendant to plead guilty to that crime, and, therefore, in this case the court should have refused to receive appellant's plea of guilty. No authority in support of the contention is cited. In several states there are statutes which, like ours, permit the jury in a murder case to return a verdict which will prevent the imposition of the death sentence. Under such statutes, there is no case coming to our attention that holds that a defendant may not plead guilty and thereby confess the crime. A defendant has the right to have a jury not only to try the issue of guilt or innocence, but also to decide what the punishment shall be. The right to a trial on the issue

of guilt or innocence may be waived by a plea of guilty, which leaves only the question of punishment to be decided by the jury. State v. Comery, 78 N. H. 6, 95 Atl. 670. It might be argued that the amendment of 1915 was only intended to apply to cases properly triable to a jury on a plea of not guilty, but we favor a more liberal construction, as we think the legislature intended that in every case of murder in the first degree the defendant, convicted either by the verdict of a jury or on a plea of guilty, should not suffer the penalty of death until a jury should have had the opportunity to say whether the lesser penalty should be imposed. See: Lowery v. Howard, 103 Ind. 440, 3 N. E. 124; Wilson v. State, 117 Neb. 692, 222 N. W. 47. Whether a defendant may waive the right to have a jury fix the punishment, we need not decide. See: State v. Habig, 106 Oh. St. 151, 140 N. E. 195.

The defendant on cross-examination testified to a rather remarkable career of crime. He is about 54 years of age. In 1900 he deserted from the United States army and thereafter assumed the name of Morris under which he was married and divorced. He was convicted of robbery in California and sentenced to imprisonment for fifteen years. After serving three years, he escaped by running away from the prison road gang. A year later he was recaptured and served seven years more. In Utah he served a prison sentence of two years for receiving stolen goods. Asked if he had ever been convicted of sodomy, he answered: "Not exactly sodomy either. They had me charged with it and I got it reduced to simple assault, a misdemeanor, pleaded guilty and got ninety days." He came to Sheridan under the name of Wayne in a car which he knew had been stolen. On the way to Sheridan he committed a robbery at Wheatland, Wyoming. Asked if he had not had considerable experience in robbery, he replied: "Not very much. I never do anything like that, only when I am up against it." It is not contended that the court erred in admitting any of the

evidence of the foregoing facts. It is claimed, however, that the assistant prosecuting attorney in his address to the jury was guilty of misconduct in the use of certain "inflammatory" remarks which referred to appellant's criminal career, and by insisting that the public expected an unqualified verdict. The remarks complained of were not objected to at the time they were made. We have said that the chance of mistrials ought not to be encouraged by a rule permitting counsel to remain silent in the presence of prejudicial misconduct of an adversary in argument, and afterward, when an adverse verdict is returned, obtain a new trial on the ground of misconduct of counsel. Horn v. State, 12 Wyo. 80, 163, 73 Pac. 705, 727. Besides, we cannot in this case be sure that the remarks are accurately reported. They are not made a part of the record of the hearing, but are set forth, evidently from memory, in an affidavit in support of the motion for a new trial. The accuracy of the affidavit in this respect was challenged by the affidavit of the attorney who was charged with making the remarks. In these circumstances we deem it unnecessary to set forth the remarks in this opinion. Even if they were made as alleged in the affidavit filed by appellant, we would doubt that they were outside the scope of legitimate argument on the facts before the jury. It is clear that there was no such flagrant violation of the proprieties as would justify us in disturbing the verdict. Horn v. State, supra; Wilson v. State, 32 Wyo. 37, 56, 228 Pac. 803.

The judgment is affirmed, and the court appoints Friday the 23rd day of September, 1932, for the execution of the sentence pronounced by the court below.

BLUME and RINER, JJ., concur.